OREN HOOPER'S SONS

*vs.*

STERLING-COX SHOE Co., et al.

Cumberland.    Opinion December 19, 1919.

*Lease. Renewal clause. Rule as to continuance of tenancy beyond the specified time and the payment of rent being strong and in many cases conclusive evidence of intention of lessee to avail himself of a further term.*

On appeal by defendant from a decree of the sitting Justice enjoining it from interfering with the plaintiff's possession of certain leased premises the issue is whether the lease had been renewed or had expired.

The lease provided for a term of one year from September 1, 1916, the lessee to "have the right of renewal to July 1, 1921."

*Held:*

1. That this was not a lease from year to year, but a lease for one year with the right of renewal for the entire balance of the term, that is until July 1, 1921, a period of three years and ten months.

2.  The plaintiff legally and seasonably exercised its right of renewal before the expiration of the first year by a written notice which, although somewhat ambiguous, was deemed sufficient by both parties at the time.

3   Apart from this notice, the continuance of the tenancy beyond the specified term and the payment of rent, are strong and convincing evidence of the lessee's intention to avail itself of the further term, especially in view of the fact that the lessee had sublet a portion of the premises with the knowledge and consent of the lessor.

Bill in equity asking for an injunction restraining defendant from interfering with plaintiff's possession of a certain building or part thereof.  Cause was heard upon bill, answer, replication and proof. From decree of Justice granting prayer of petitioner, defendant entered an appeal to Law Court.  Judgment in accordance with opinion.

Case stated in opinion.

*Maurice E. Rosen*, for plaintiff.

*Ernest M. White*, for defendants.

SITTING:  CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

CORNISH, C. J.   This is an appeal by defendant corporation from a decree of the sitting Justice enjoining it from interfering with the plaintiff's possession of certain leased premises.   The issue is whether the lease had been renewed or had expired.

The essential facts may be stated as follows: J. B. Brown & Sons, being the owners of a certain building located on Commercial Street in the city of Portland, on July 1, 1916, leased the easterly half thereof to the defendant for a term of five years.   That lease therefore will expire on July 1, 1921.

On August 29, 1916, the Sterling-Cox Shoe Company sublet the ground floor of this building to the plaintiff corporation for the term of one year from September 1, 1916, at the rental of twenty-five dollars per month payable monthly, the first payment to be made on October 1, 1916.   That lease contained the following renewal clause: "The lessee shall have the right of renewal to July 1, 1921."   The Hooper Company entered into possession under the lease.

On October 2, 1916, a supplementary arrangement was made between the plaintiff and the defendant by which in consideration of

the space turned over by the plaintiff to the defendant on the lower floor of the building, the latter agreed to give the plaintiff twice the amount of floor space on the top floor, together with access thereto and elevator service without charge. On August 3, 1917, before the expiration of the first year, the plaintiff wrote the defendant: "We enclose herewith our check for July rent and wish to give you notice herewith that we desire to renew our lease for another year in accordance with the terms of our present lease." No written acknowledgment of this letter, although requested, appears in the case, but in a conversation between the representatives of the parties a few days later, Mr. Cox was asked by Mr. Hooper why he had not acknowledged receipt of this communication and replied, as he says, that they did not wish to renew the lease, that the conditions had been violated repeatedly and they did not care for the plaintiff as a tenant. However he did not refuse to renew the lease, and nothing was done to that end by the defendant. The plaintiff continued to occupy during the second year, the same as during the first.

In June and July, 1918, arrangements were made by the plaintiff to sublet the lower floor for restaurant purposes. This necessitated certain alterations in the interior of the building, the installation of restaurant fixtures, etc.

On June 25, 1918, a written agreement was entered into between the plaintiff and the defendant under which the plaintiff agreed to take care of all claims made by the owners of the building against the defendant for alterations or damages done to the property, and also to pay the defendant all sums for additional insurance caused thereby.

This agreement was sent to the plaintiff by the defendant enclosed in a letter of the same date, June 25, 1918, in which the defendant also asked the plaintiff to rearrange the goods on the upper floor and stated that in moving the plaintiff's goods from the lower to the upper floor to make room for the restaurant it would be obliged to make a small charge for elevator service. This letter speaks of "alterations and added insurance due to your subletting portions of "your" floor space." On July 1, 1918, the lease was made from the plaintiff to the sublessee. On September 20, 1918, in answer to the plaintiff's letter of September 16, 1918, which is not in evidence, the defendant wrote: "In reply to yours of the 16th, I believe I have remedied your difficulty in getting to our top floor by explaining to your foreman who usually calls here for goods stored, how he can at all times reach the upper

story. · He has no doubt explained to you before this." On October 1, 1918, the defendant wrote the plaintiff, stating that owing to war conditions it had been obliged to discontinue shoe manufacturing and had been forced to make new arrangements for the lease of the building; that the concern taking it over would need the lower floor and therefore the plaintiff must leave the building clear of its property by November 1, 1918.

This was followed by a notice to the plaintiff, dated November 12, 1918, signed by Neal W. Cox, to the effect that the Sterling-Cox Shoe Company had assigned to him its lease of the building and immediate possession of the ground floor was demanded. An assignment appears in the evidence dated November 9, 1918, and is signed by Sterling-Cox Shoe Company by Neal W. Cox, Treasurer, and the assignee named is Neal W. Cox in his individual capacity. This bill in equity praying for an injunction was brought on November 14, 1918. The injunction was granted by the sitting Justice and the cause is before this court on appeal.

From the foregoing statement of facts which is designedly made quite full, the correctness of the ruling below is apparent. The rights of the parties can be readily determined in accordance with settled principles of law.

The lease of August 29, 1916, from defendant to plaintiff was in proper form and demised the premises for a term of one year from September 1, 1916, to September 1, 1917, with the right of renewal to July 1, 1921, the terse language being, "the lessee shall have the right of renewal to July 1, 1921." The meaning of this renewal clause is obvious. The five year term of the lease which the Shoe Company held from the Browns would expire on July 1, 1921. The Shoe Company therefore gave to the plaintiff a sublease for one year, and if the plaintiff after one year's trial should desire to renew for the balance of the term held by the Shoe Company, that is to July 1, 1921, it had the absolute right to do so. It was not a lease from year to year. Had it been, the last year would run to September 1, 1921, which would be two months beyond the term held and controlled by the Shoe Company. There were two separate terms and only two, an absolute term of one year and at its expiration an optional term of three years and ten months. It is a lease and not a mere agreement to lease. A lease may create a term to commence in futuro and the additional

term is regarded as arising from the original demise.   *Weed* v. *Crocker*, 13 Gray, 219;  *Willoughby* v. *Atkinson Co.*, 93 Maine, 185;  *Perry* v. *Lime Co.*, 94 Maine, 325-334.

Such being the construction of the instrument did the plaintiff legally and seasonably exercise its right of renewal?   We think it did and in two ways, the one by words, the other by acts, either of which methods would constitute an election.

In the first place, on August 3, 1917, which was before the expiration of the first year, the plaintiff wrote to the defendant that it desired to renew its lease for another year, in accordance with the terms of the existing lease.   This language is somewhat ambiguous. The terms of the lease did not permit that it should be renewed for a single year, nor on the other hand did it require that if renewed for the whole term notice should be given to the defendant annually. The plaintiff testified that he desired to renew till July 1, 1921, but gave the notice in this form because he thought he was obliged to do so.   He gave no further notice, however, because on consulting his attorney he ascertained that it was unnecessary.   Mr. Hooper's statement of intention seems reasonable, and the defendant apparently took the same view because it made no reply to the plaintiff's letter and never afterward, until this litigation arose, raised the point that the renewal notice was insufficient.   In the conversation between the parties, already referred to, Mr. Cox did not base his partial disinclination to renewal upon the inadequacy of the notice but upon the unsatisfactory character of the plaintiff's occupation.

But apart from this notice, it is firmly settled in this State, whatever the rule may be in some other jurisdictions, that continuance of tenancy beyond the specified term, and the payment of rent are strong and in many cases conclusive evidence of the lessee's intention to avail himself of the further term, and obviate the necessity of written notice.   *Sweetser* v. *McKenney*, 65 Maine, 225; *Holly* v. *Young*, 66 Maine, 520; *Briggs* v. *Chase*, 105 Maine, 317; *Kelleher* v. *Fong*, 108 Maine, 181.   The right granted is wholly in the interest of the lessee and to be exercised by him as a matter of choice.   In the case at bar no written notice was required and the continued occupation was strongly probative of the plaintiff's election to renew.   The specific term ended September 1, 1917, but the plaintiff continued to occupy and pay rent until October 1, 1918, when the defendant notified it for the first time that the lease was terminated.

The plaintiff's intention is further evidenced by the fact of its subletting the ground floor for a restaurant as late as July 1, 1918, with the knowledge and consent of the defendant and by the agreement which the parties made as to the expense of the changes and the increased insurance. It is unreasonable to suppose that the plaintiff would have entered into this arrangement and subjected itself to this additional expense unless it expected to hold during the balance of the term. And the defendant must have so understood it. Moreover every motive of self interest would lead the plaintiff to renew because it received from the sublessee of a portion of the premises the same amount it paid the defendant for the whole, so that it was enabled by the sublease to use the upper floor for storage purposes without any cost whatever. The evidentiary strength of continued occupation is reinforced by all the circumstances in the case.

> *Appeal dismissed with costs.*
> *Decree of sitting Justice*
> *affirmed.*
> *Temporary injunction made*
> *perpetual.*