[Civ. No. 7312.   Third Dist.   Apr. 21, 1947.]

MAZIE ERICKSON, as Executrix, etc., Respondent, v.
CLYDE D. BOOTHE, Appellant.

Edward T. Taylor for Appellant.

Lafayette J. Smallpage and T. B. Scott for Respondent.

ADAMS, P. J.—Respondent, as executrix of the last will of Timothy H. Carlon, deceased, brought this action against appellant for declaratory relief and to have determined their respective rights and duties under a certain lease of real property executed July 27, 1939. Prior to said date decedent, who was the owner of the land, had been judicially declared an incompetent person, and W. J. Ferrel had been appointed and qualified as the guardian of his estate. Pursuant to his authority as guardian, and an order of the court in the guardianship proceedings, the guardian as lessor, and appellant as lessee, entered into the said lease which was for a term beginning with its date, to wit, July 27, 1939, and ending on the 31st day of December, 1945, but contained an option reading as follows: "provided, however, that if, at the end of said period the Lessee shall not be in default under the terms hereof, and shall give written notice to the Lessor of his intention so to do, at least six (6) months prior to the date of termination hereof, said Lessee shall have the option to re-lease said property upon the terms hereinafter set forth, for an additional period of four (4) years."

The lease recited that the land demised was not presently suitable for planting or growing clover, and lessee agreed to level, check and seed same and make ditches, the lessor to furnish seed and furnish concrete pipe, laid. The lessor also agreed to furnish fencing, corrals and scales, the lessee to furnish the labor of installing said scales. In consideration of the work to be done by the lessee, it was agreed that he should not pay any rental on the portion of the property leveled and checked, for a period of two years, commencing January 1, 1940, and ending on December 13, 1941, but for the succeeding four years of the term the lessee was to pay as rental the sum of $10 per acre per annum on all land leveled and checked, the amount of such land to be determined by survey; and the sum of $1.00 per acre, commencing January 1, 1940, to and including December 31, 1945, upon all of the land not checked and leveled. It was also provided that "In the event that the

option hereinabove referred to is exercised by the Lessee, the rental on the leveled and checked land shall be Twelve Dollars ($12.00) per acre per annum, and the rental on the remainder of said land shall be One Dollar ($1.00) per acre per annum.''

Carlon died and respondent was appointed as executrix of his last will and testament. She duly filed notice to creditors under which the time for filing claims expired November 26, 1943. On or about June 21, 1945, appellant delivered to respondent a notice of his intention ''to release or extend the term of that certain lease dated the 27th day of July, 1939, . . . and to notify you of the fact that I have and do hereby exercise the option given in said lease for an additional period of four years, according to and upon the terms provided in said lease. The cash rental for the clover land for said extended term to be $12.00 per acre, per year, and the rental on the remainder of said land to be $1.00 per acre, per year.''

Respondent refused to execute another lease, and on or about January 5, 1946, brought this action in which she stated that a controversy had arisen between her and defendant relating to the legal rights and duties of the respective parties, in this: ''Plaintiff contends that said property has not been re-leased for the additional four-year period; that no proceedings have ever been had or taken in the Estate of TIMOTHY CARLON, deceased, for the re-leasing of said property, nor has said Defendant filed any claim in the Estate of TIMOTHY CARLON, Deceased, based upon his option to re-lease said real property; that, accordingly, Plaintiff contends that said lease of July 27, 1939 expired on December 31, 1945, and that said Defendant has no right to the possession of said property. Plaintiff is informed and believes and accordingly alleges that Defendant contends that said option was exercised and that a lease for an additional period from and after December 31, 1945 has been effected.'' She prayed for a declaration of her rights and duties, for a declaration that the right of defendant to the possession of said property ceased on December 31, 1945, and for general relief.

After trial the court found: ''That for the purpose of determining the issues presented by the Pleadings and Proofs herein only, the Court finds that said Defendant entered into possession of said premises and all thereof and has fully performed all of the terms and covenants thereof and made all payments of rental as therein provided and is not in default of any obligation or under any of the terms of said lease to

and including the 31st day of December, 1945." However, it further found that defendant had failed to file a claim in the estate of Carlon or to institute any proceedings for "the approval of the re-leasing of the aforesaid premises," and as conclusions of law it stated that the option to release gave to the defendant only an option to create a new tenancy and a new lease of the premises; that defendant had failed to perfect his right to a new lease and that he was, and had been ever since January 1, 1946, in possession of said premises unlawfully, without any right thereto whatsoever. In the judgment that followed it was ordered that a writ of restitution issue in favor of plaintiff against defendant for repossession of the property. From the aforesaid judgment this appeal has been taken upon the judgment roll alone. The record was filed in this court on July 31, 1946, appellant's opening brief was filed September 27, 1946, and respondent's brief was filed November 16, 1946. On December 9, 1946, respondent filed in this court notice of a motion to dismiss the appeal. Said motion was noticed for the same date as argument on the merits and was submitted for decision therewith.

The motion to dismiss was based upon the records in the case and an affidavit by respondent in which she alleged: "that by agreement, under and by which Plaintiff and Respondent agreed to waive costs of suit and claim for damage to the real property involved in this action, Defendant and Appellant vacated and surrendered possession of said real property to Plaintiff and Respondent on or about April 10, 1946; that said Defendant and Appellant surrendered possession of and vacated said premises without the issuance of any Writ of Restitution; that affiant is now in complete possession of said premises."

In opposition to respondent's motion appellant filed an affidavit in which he denied that he had surrendered possession of the premises by virtue of the agreement alleged by respondent, and asserted that he surrendered the premises solely because of the demand of plaintiff after the decision of the trial court which adjudged that he was unlawfully in possession and decreed that a writ of restitution issue in favor of plaintiff; that he did not vacate the premises voluntarily and that he had not surrendered the lease or any interest therein, nor surrendered or abandoned or waived a finding of fact of the trial court, which read: "The findings hereinabove under Paragraph (4) are made and by all parties accepted, without

prejudice to either party for any claims or obligations of one party against the other which may be the subject matter of any action for damages or otherwise which may be hereafter instituted by either party in connection with the said lease or the use, or deprivation of use, of said premises.''

■ Respondent's motion to dismiss is based upon the assumption that since appellant has surrendered the premises no rights of his remain which will be affected by any decision which may be rendered by this court on the merits of the appeal. We do not agree with such a contention. A pertinent case is *Warner Bros. Co.* v . *Freud,* 131 Cal. 639, in which the court said, at page 644 [63 P. 1017, 82 Am.St.Rep. 400] : ''In *Erwin* v. *Lowry,* 7 How. 184 [12 L.Ed. 655], the supreme court of the United States said: 'Five years is the time allowed for prosecuting appeals to and writs of error out of this court and in many cases decrees and judgments are executed before any step is taken to bring the case here; yet in no instance within our knowledge has an appeal or writ of error been dismissed on the assumption that a release of errors was implied from the fact that money or property had changed hands by force of the judgment or decree. If the judgment is reversed, it is the duty of the inferior court, on the cause being remanded, to restore the parties to their rights.' Upon this point the foregoing is approved in *O'Hara* v. *M'Connell,* 93 U.S. 150, 154 [23 L.Ed. 840].'' Then on page 645 the court quoted as follows from Freeman on Judgments, section 480a: ''One against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against his seeking to avoid it for error. The better view, we think, is, that though the execution has not issued, the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor the right to appeal.''

The Warner Brothers Company case was quoted with approval in *Mortgage Securities Co. of California* v. *Pfaffman,* 47 Cal.App. 383 [190 P. 641], which involved the question of the right to possession of an automobile as between the plaintiff, holder of a chattel mortgage on the automobile, and the defendant, who claimed a lien thereon for repairs. During the litigation defendant delivered the automobile to plaintiff. At page 385 the court said: ''The chief contention made by appellant is . . . that the evidence showed a voluntary de-

livery of the automobile by the defendant to the plaintiff, with intent to satisfy the judgment first rendered by the court and to make a settlement of the controversy. That the mere delivery of the automobile to the plaintiff pending the appeal did not deprive the defendant of the right to have a judgment for restitution of the property upon retrial, seems very clear. No stay bond was given, and the plaintiff without doubt had the right, pending an appeal under such circumstances, to require the property to be delivered to it in compliance with the terms of the judgment. The fact that no order or execution was issued upon the judgment does not change the situation, for the law imposed the duty upon the defendant, where execution was not stayed, to deliver the machine to plaintiff upon its demand.'' In *People* v. *Chamness*, 109 Cal.App.Supp. 778, 779 [288 P. 20], the court said: ''The rule is well established in civil actions, however, that the satisfaction of a judgment, unless by way of compromise or with an agreement not to take or pursue an appeal, does not operate to terminate the right to an appeal. [Cases]''

In the Michigan case of *Hanaw* v. *Bailey*, 83 Mich. 24 [46 N.W. 1039, 9 L.R.A. 801, 802], which involved a motion to dismiss the appeal on the ground that the lessee had surrendered the land to the lessor, the court said: ''The question to be determined by the appeal related to the forfeiture of defendant's contract, and his right to possession at the time the suit was commenced, and not afterwards. It is contended by plaintiff's counsel that this giving up of possession was a satisfaction of the judgment of restitution, and there was then nothing left to appeal from. This contention will not hold in such a case as this. The abandonment of the farm by the defendant cannot be considered as an act in satisfaction of the judgment, or an admission that he was at the commencement of suit holding possession of the land unlawfully. It was a transaction entirely independent of the judgment and prior proceedings in this case.''

The Arkansas case of *Bolen* v. *Cumby*, 53 Ark. 514 [14 S.W. 926], held that a defendant, in an action of ejectment against whom judgment had been rendered, might submit to the judgment, and surrender the possession, without impairing his right of appeal.

In *Keyes* v. *Hurlbert*, 42 Cal.App.2d 532, 535 [109 P.2d 364], the court said: ''It has been clearly established in this state that where there is left any material or vital question for

determination the court should not dismiss the appeal but should permit it to be heard on the merits. (*Hartke* v. *Abbott,* 106 Cal.App. 388 [289 P. 206]).'' Also see *Fox* v. *Grayson,* 6 Cal.Unrep. 72 [53 P. 932].

In the instant case there is left a material and vital question for determination, namely, whether appellant is entitled to the leased premises for four more years from December 31, 1945, or whether his rights under his option were lost by reason of his failure to file a creditor's claim in the probate court and/or to take proceedings under sections 840-843 of the Probate Code to secure a new lease of the premises.

It is generally held that in construing provisions of a lease relating to renewals, if there is any uncertainty, the tenant rather than the landlord is to be favored. (*Streicher* v. *Heimburge,* 205 Cal. 675, 683 [272 P. 290].)

Respondent argues that the language of the option clause of the lease was properly construed to mean that at the expiration of the original term thereof an entirely new lease was to be executed by the parties covering a new term of four years, and that the lessee's notice of exercise of the option did not effect an extension of his term; that the terms ''renew,'' ''re-lease'' and ''extension'' are distinguishable; that because the option reads that the lessee ''shall have the option to re-lease said property upon the terms hereinafter set forth, for an additional period of four (4) years,'' it must be construed to mean that a new lease was to be executed; and that, in order to secure the execution of same, it was necessary for Boothe to file a claim in the estate of Carlon under the provisions of section 707 of the Probate Code, and/or to secure a new lease by proceedings in conformity with sections 840-843 of that code; and that since he did neither, his right to possession of the premises terminated on December 31, 1945, and his possession thereafter was unlawful.

Options for renewal such as that under consideration are generally held to be in the nature of a present demise for the full period including the renewal period. In the New York case of *Orr* v. *Doubleday, Page & Co.,* 223 N.Y. 334 [119 N.E. 552, 1 A.L.R. 338], a lease was given for a period beginning November 1, 1904, and expiring October 31, 1914, ''with the privilege to said tenant of a renewal for another term of ten (10) years, upon the same terms as are contained herein,'' provision being made for notice prior to the expiration of the term. The court there said, page 553 [119 N.E.]:

"The exercise by the defendant of the privilege of renewal extended the term of the lease for the additional period of ten years as a present demise for the full term of twenty years, the last half of which was to take effect at the termination of the first, at the option of defendant. A new lease for the additional years was not necessary.'' While that court said that there was authority for a contrary view, some authorities making a distinction between a privilege or covenant of a renewal and a privilege or covenant of an extension, it added, page 554 [119 N.E.] : "The distinction made by the body of judicial opinion we have referred to is too refined and theoretical to be real, as a matter of law, in practical affairs. Men of ordinary learning, intelligence, and experience do not universally heed or invoke it in their business transactions. The law is neither just nor practical when it founds decisions of controversies exclusively upon that distinction. The word 'renewal' or the words 'to renew' have not a definite and fixed legal significance to which the parties are bound by the use of them. A lease, like any other contract, is to be enforced in accordance with the expressed intention of the contracting parties. If interpretation of its language is necessary, the proper and established rules are to be applied. The language in question of the lease at bar means that the demise was for ten years absolutely and for ten additional years in case the lessee so elected, and gave the required notice of its election. The lease is a present demise of the premises. The defendant entered into occupation under it. The lessor had no choice or decision in the matter of renewal. The letting was for the term of ten years 'with the privilege to said tenant of a renewal for another term of ten years upon the same terms as are contained herein.' There is no express covenant on the part of the lessor to enter into a new lease or do other act. The only acts called for to effect the renewal are on the part of the defendant. The renewal did not evoke new conditions of continuance in occupation, and a new lease would be useless. The acts of the defendant alone were intended, inasmuch as the lease enumerates no other act, to extend the stipulations of the lease to the occupation through the additional years, and it is immaterial that the demise was to take effect as to the additional years or term in the future at the option of the defendant.''

The rule above stated has been followed in the following New York cases: *Madison Fifty-Second Corp.* v. *Mulvey,*

46 N.Y.S.2d 779; *Horn & Hardart Co.* v. *115 East 14th Street Co., Inc.,* 7 N.Y.S.2d 688, 689; *Feldman* v. *Sheridan Warehouse Co-Operative Corp.,* 247 App.Div. 82 [285 N.Y.S. 1033]; *Bribitzer* v. *Wahlig,* 235 App.Div. 702 [256 N.Y.S. 45, 46]; *New York Business Buildings Corp.* v. *James McCutcheon & Co.,* 229 App.Div. 681 [243 N.Y.S. 255, 258]; *Sisson Realty Corp.* v. *Mathews,* 131 Misc. 714 [227 N.Y.S. 721, 724]; *Bashein* v. *2682 Broadway, Inc.,* 39 N.Y.S.2d 137, 138. In the latter case the court said: "Upon the exercise of the option by the tenant a new tenancy was not created to begin at the end of the original term; it is deemed to have effected the continuance of the first seven years for seven years more, thus constituting a lease for fourteen years in legal contemplation."

The same rule has also been followed in other states. See *Ackerman* v. *Loforese,* 111 Conn. 700 [151 A. 159, 160]; *W. G. Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283 [158 A. 548, 550]; *Pritchett* v. *King,* 56 Ga.App. 788 [194 S.E. 44, 46]; *Khourie Bros.* v. *Jonakin,* 222 Ky. 277 [300 S.W. 612]; *A. O. Andersen & Co.* v. *Texas Co.,* 279 F. 76, 80; and *American Brake Shoe & Foundry Co.* v. *New York Rys. Co.,* 278 F. 842, 843, wherein the court said: "In *Orr* v. *Doubleday, Page & Co.,* 223 N.Y. 334, 119 N.E. 552, 1 A.L.R. 338, the Court of Appeals adopted a principle not in accord with some authorities; but Judge Collin's opinion is convincing, and announced a doctrine which, it seems to me, is sound both as matter of law and wise from a business standpoint, and is applicable to this case."

In *Willoughby* v. *Atkinson Furnishing Co.,* 93 Me. 185 [44 A. 612], the facts were that on August 15, 1893, the defendant took a written lease for the term of three years, "with the privilege, at the end of said term, of *re-leasing* for a term of ten years, or any part thereof, at the same yearly rental." (Italics added.) Defendant gave written notice it would re-lease for three months. The court said: "This, accompanied by a continuation of possession, was sufficient for the purpose. According to the weight of authority, the clause in the lease already quoted should be construed as a present demise to take effect in the future at the option of the lessee." To same effect is *Oren Hooper's Sons* v. *Sterling-Cox Shoe Co.,* 118 Me. 404 [108 A. 353].

There is nothing in the original lease and option in the case before us which suggests that the making of a new lease

was intended. In *Thurston* v. *F. W. Woolworth Co.*, 66 Ind. App. 26 [117 N.E. 686, 688], the court quoted as follows from Underhill on Landlord & Tenant, volume 2, section 803:

"In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease. *The lease must clearly and positively show that the making of a new lease was intended. This must appear from the express language of the parties.* The reason for the presumption is the fact that the making of a new lease will involve trouble and expense which should be avoided by the courts, if possible, unless it is very clear that the parties had expressly agreed to incur such trouble and expense. For if the new lease, as is always the case, when executed. is but a substitute for and a re-execution of the old lease. it is in no wise more efficacious or obligatory, nor does it confer any greater rights than the latter." (Italics added.)

And at page 688 the court continued: "It should be noted that in the lease under consideration the lessor did not covenant to renew the lease, the language being that the lessee 'shall have the privilege of renewing this lease,' etc., which implies that the affirmative act of election was the only thing necessary to give appellee the additional term. Under the original lease appellant parted with his right of possession, not only for a term of five years absolutely, but for a further term of five years at the election of appellee. Therefore no further agreement on appellant's part was necessary."

In *Wiener* v. *H. Graff & Co.*, 7 Cal.App. 580 [95 P. 167], a lease provided that the lessee should "have the privilege of one year's additional lease on the same terms and at the same rental as heretofore, provided that they signify their acceptance in writing" to the lessor on or before a specified date. This court said, page 583: "We think, further, that upon compliance with the condition as to giving notice the lessees would then be entitled to hold for the additional term under the original lease and not under the notice—the lease would then become a lease for both the original and extended terms. (*Sheppard* v. *Rosekrans*, 109 Wis. 58 [83 Am.St.Rep. 886, 85 N.W. 199].)"

In *Braun* v. *Leo G. MacLaughlin Co.*, 93 Cal.App. 116 [269 P. 191], an action for declaratory relief which involved a lease with an option "for an *additional lease* of five years

from September 30, 1927, at a monthly rental of $300.00,'' notice of intention to exercise the option was duly given. The court said, page 123: ''We are well aware of the fact that there is a clear distinction between the meaning of the expression 'renewing a lease' and 'extending the term' thereof (*Shamp* v. *White*, 106 Cal. 220 [39 P. 537]; *Robertson* v. *Drew*, 34 Cal.App. 143 [166 P. 838]; 15 Cal.Jur. 659), but we think the distinction is wholly immaterial under the facts of the case at bar. If the expression 'an *additional lease*,' used in the option, be construed as meaning 'a renewal of the old lease,' then it was incumbent upon respondent to give notice of his election to renew the lease within a reasonable time before the expiration of the original lease. This respondent did. If it be construed merely 'as an extension of the terms of the old lease' (there being no special form of notice required by the option), respondent could have stayed in possession after the expiration of the old lease and that would have been a sufficient notice of its intention to exercise the option to extend the lease. But in this case the old lease had not expired when the notices of January 6 and January 22, 1925, were given, and respondent was in possession under the old lease; therefore, if the option be construed merely as providing for 'an extension of the old lease,' and respondent had stayed in possession after the expiration of the old lease, the notices would have been unnecessary. On the other hand, if the option be construed as calling 'for a renewal,' meaning a new lease, respondent has fully complied with all the requirements entitling it to a new lease upon the same terms and conditions as the old one, except as to time and rental. Therefore, whether it be treated as an option for a 'renewal,' as the trial court did, or as a 'mere extension of the old lease,' is wholly immaterial, for in either case the *terms and conditions are to be exactly the same.*'' Also see *Becker* v. *Submarine Oil Co.*, 55 Cal.App. 698, 700 [204 P. 245].

The reasoning of the Braun case is applicable to the one before us, that is, it is immaterial whether the option provides for a renewal or a mere extension of the old lease. ■ Even if construed as calling for the execution of a new lease, it does not follow that it was incumbent upon the lessee either to file a claim under section 707 of the Probate Code or to petition for same under the provisions of sections 840-843 of said code. Respondent argues that section 707 provides that

"all claims arising on contract, whether they are due, not due, or contingent" must be filed or presented; that appellant's lease is a *contract*, wherefore he should have presented a *claim*. But the code section does not say that all contracts must be filed, but only "claims" arising upon contract; and respondent has cited no authority nor have we been able to find any, holding that a claim of right to renew or extend a lease under an option clause therein, constitutes a "claim" within the meaning of that term as used in section 707. All of the cases cited by respondent in this connection involved money demands against the general assets of an estate. None is here involved.

In *Tanner* v. *Best,* 40 Cal.App.2d 442, 445 [104 P.2d 1084], the court said that "A 'claim' refers to a debt due the claimant (11A Cal.Jur. [sec.] 485)"; that it is a "money demand"; and it held that a claimant of specific property cannot properly be called a creditor within the meaning of the statute, citing *Estate of Dutard,* 147 Cal. 253, 256 [81 P. 519].

In 11A California Jurisprudence, section 485, pages 680-681, it is said: "The word 'claim' is a very broad term, when used in certain connections; and, while not synonymous with 'debt' or 'demand,' in their general senses, in the probate and administration statutes the words 'claimant' and 'claim' are used as synonymous with 'creditor' and 'legal demand for money' to be paid out of the estate, and the words 'claim' and 'debt' are used interchangeably in providing that allowed claims shall be ranked among the acknowledged 'debts' of the estate. . . . Whatever signification may be attached to the term 'claim' standing by itself, in the statute relating to presentation of claims for payment it has reference only to such debts or demands against the decedent as might, if due, have been enforced against him in his lifetime by personal actions for the recovery of money, and upon which only a money judgment could have been rendered. The claim in this sense is a statement of a cause of action for money on which a complaint stating it more particularly might be founded." Also see *McKay* v. *Security-First National Bank,* 35 Cal.App.2d 349, 355 [96 P.2d 376] ; *Estate of Bailey,* 42 Cal.App.2d 509, 511 [109 P.2d 356] ; *Cohn* v. *Cohn,* 100 Cal.App. 746, 748 [281 P. 504] ; *Newport* v *Hatton,* 195 Cal. 132, 150 [231 P. 987] ; *Porter* v. *Van Denburgh,* 15 Cal. 2d 173 [99 P.2d 265] ; *O'Donnell* v. *Lutter,* 68 Cal.App.2d

376, 385 [156 P.2d 958] ; *In re Brust's Estate,* 111 Minn. 352 [127 N.W. 11, 13, 20 Ann.Cas. 852] ; *Patterson* v. *Carr,* 189 Iowa 69 [176 N.W. 265, 266].

In *Bewick* v. *Mecham,* 26 Cal.2d 92, 95 [156 P.2d 757, 157 A.L.R. 1277], an action for specific performance, it was held that an option to purchase contained in a lease is a covenant running with the land—that a demand for specific performance of the contract of a decedent to convey, differs from a claim of a general creditor seeking satisfaction out of the assets of the estate, citing Probate Code, section 700 et seq., *Estate of Dutard,* 147 Cal. 253, 257 [81 P. 519] ; *Porter* v. *Van Denburgh, supra; Estate of Bailey, supra;* 21 Am.Jur. 579-580, § 348.

We think it follows from the foregoing that appellant was in no sense a creditor of the estate of Carlon, that his rights under the lease gave rise to no debt on the part of the lessor, and that the filing of a claim against the estate was not necessary.

As for proceedings under sections 840-843 of the Probate Code, we think that those sections are also inapplicable to a case such as this. They provide that whenever it shall appear to the advantage of an estate to lease property of the decedent the court may authorize and direct the execution of a lease. A petition for such a lease must show the advantages to accrue therefrom and the term, rental and general conditions of the proposed lease. On a hearing the court may consider the petition and any objections that may be presented, and, if it is satisfied that it will be to the advantage of the estate, shall authorize the execution of the lease. However, the period of same may not be longer than is prescribed by the statute, and the court's order shall prescribe the minimum rental and the period of the lease, and may prescribe other terms and conditions.

From the language of the sections they are obviously inapplicable to an option to re-lease or for an extension of the term of an existing lease in which the rental, the period and other terms and conditions have already been fixed in the original instrument. Had appellant filed a petition under these provisions there would have been nothing for the court to decide as to whether the additional term would be of advantage to the estate, it would have been powerless to fix the rental, the period or any other terms or conditions, as those matters had already been decided by the court in the guar-

dianship proceeding when it approved the original lease with the option; and, as was found by the trial court in this proceeding, appellant had fully performed all of the terms and covenants, was not in default of any obligations, and had duly given the notice provided for by the instrument. It is a platitude that the law does not require the doing of idle acts (Civ. Code, § 3532), and the filing of a claim or proceedings under sections 840-843 would have fallen into that category in this case.

Respondent relies upon *Robertson* v. *Drew*, 34 Cal.App. 143 [166 P. 838]. There a lease provided that the lessee had the privilege of "renewing the lease" for the further term of from one to five years. The lessee gave notice of desire to renew for a period of two years with an option of two more years at the same rental, but he asked for certain structural changes in the premises to be provided for in the new contract. The court said that there appears to be a distinction between the meaning of the expressions "renewing a lease" and "extending the term" thereof; that the mere fact that "renewal" appeared in the option did not necessarily show the option was not for an extension; that what is meant by the expression "renewal" in a given case may depend upon a reading of the whole instrument and upon the practical construction given to its provisions by the parties themselves, which, in that case, indicated that a new lease was contemplated. No such circumstances appear in the case before us since the terms of the original lease fixed the terms of any renewal or extension, and left nothing to be done by either party except the giving of the notice by the lessee, which was done. It is conceded by respondent in her brief "that had Carlon lived, Boothe has performed all of the conditions precedent to the exercise of his right to a new lease from Carlon, and Carlon would not be entitled to a writ of restitution." In other words, having fully complied with his obligations, Boothe's continued occupancy would have been lawful, without any action by Carlon or his guardian. This is an admission that the parties contemplated no further action to create an additional term. Furthermore, that case did not involve the question upon which the trial court rested its decision in the instant case, to wit, whether the filing of a claim or a petition for a lease were requisite to the perfection of appellant's right to continued possession. Respondent also agrees in her brief that if "the claim is not based upon any

contract with the decedent, or, if so based upon a contract the approval of the Probate Court is not necessary to effectuate the same, then it is not necessary to file a claim under Section 707 of the Probate Code.'' But she argues that because, as she claims, the option is one to ''re-lease'' upon the terms specified, it requires the approval of the probate court, and affirmative action on the part of the executrix. This argument is inconsistent with respondent's concession above noted, that had Carlon lived he would not have been entitled to a writ of restitution since appellant had fully performed—as found by the trial court. If no action on the part of Carlon had he lived would have been required, and he would not have been entitled to a writ of restitution because the lessee had fully performed, the conclusion seems irresistible that, it being agreed that appellant has fully performed, the executrix was not entitled to a writ of restitution.

The motion to dismiss is denied, and the judgment is reversed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied May 12, 1947, and respondent's petition for a hearing by the Supreme Court was denied June 19, 1947.